**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| WONDERMIND SRS 44, LLC and BESPOKE WONDERMIND SPV I, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WONDERMIND GLOBAL INC., MANDY TEEFEY, DANIELLA PIERSON, and SELENA GOMEZ.<br><br>Defendants. | Case No. 26-cv-1028-GBW |

**OPENING BRIEF OF SELENA GOMEZ IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**


Of Counsel:

Mathew S. Rosengart
*(pro hac vice)*
GREENBERG TRAURIG, LLP
1840 Century Park East
Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-3889
RosengartM@gtlaw.com

Andrew R. Gray
(*pro hac vice*)
Kevin Hamilton
(*pro hac vice*)
GREENBERG TRAURIG, LLP
18565 Jamboree Road
Suite 500
Irvine, CA 92612
Tel: (949) 732-6500
AndrewR.Gray@gtlaw.com
Kevin.Hamilton@gtlaw.com

GREENBERG TRAURIG, LLP

Samuel L. Moultrie (#5979)
222 Delaware Avenue
Suite 1600
Wilmington, DE 19801
Tel: (302) 661-7000
MoultrieS@gtlaw.com

*Attorneys for Defendant Selena Gomez*


DATED: August 26, 2026

# TABLE OF CONTENTS


I. INTRODUCTION ....................1

II. NATURE AND STAGE OF PROCEEDINGS ....................3

III. SUMMARY OF ARGUMENT ....................3

IV. STATEMENT OF FACTS ....................4

A. Ms. Gomez Invests In Wondermind ....................4

B. Plaintiffs Invest In Wondermind....................5

C. "*The Cut*" Publishes A September 2025 Story About Wondermind ....................6

V. ARGUMENT....................6

A. Plaintiffs Fail To State A Common Law Fraud Claim Against Ms. Gomez ....................7

1. No Alleged False Statements Or Material Omissions Are Attributable To Ms. Gomez....................7

2. Plaintiffs Fail To Allege Any Post-Investment "Concealment" By Ms. Gomez ....................9

3. Plaintiffs Fail To Plead Scienter ....................11

4. Plaintiffs Have Not Plead, And Cannot Plead, Justifiable Reliance....................13

5. Any Common Law Fraud Claim Is Time-Barred....................14

6. Plaintiffs Fail To State A Claim For Equitable Fraud ....................17

B. Plaintiffs' Securities Fraud Control Person Liability Claim Fails ....................17

1. Plaintiffs Concede Ms. Gomez Did Not Control Wondermind....................18

2. Plaintiffs Do Not Plead Ms. Gomez Was A Culpable Participant....................19

3. Plaintiffs Fail To State A Section 10(b) Claim....................20

VI. CONCLUSION....................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abry Partners V, L.P. v. F & W Acquisition LLC*,
891 A.2d 1032 (Del. Ch. 2006)....7

*Anthemis Venture Fund II S.C.Sp. v. Victory Park Cap. Advisors, LLC*,
2025 WL 3688703 (Del. Ch. Dec. 19, 2025)....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Bartesch v. Cook*,
941 F. Supp. 2d 501 (D. Del. 2013)....8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013)....20

*Bocker v. Hartzell Engine Techs., LLC*,
2023 WL 415792 (D. Del. Jan. 26, 2023)....6

*California Pub. Employees' Ret. Sys. v. Chubb Corp.*,
394 F.3d 126 (3d Cir. 2004)....20

*In re Celgene Corp., Inc. Sec. Litig.*,
747 F. Supp. 3d 748 (D.N.J. 2024)....11

*In re Cendant Corp. Sec. Litig.*,
190 F.R.D. 331 (D.N.J. 1999)....12

*Chase Manhattan Mortg. Corp. v. Advanta Corp.*,
2005 WL 2234608 (D. Del. Sept. 8, 2005)....20

*Copland v. Grumet*,
1998 WL 256654 (D.N.J. Jan. 9, 1998)....19

*In re Dean Witter P'ship Litig.*,
1998 WL 442456 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999)....16

*Diem-II, LLC v. Maisonette Inc.*,
2026 WL 922982 (Del. Ch. Apr. 6, 2026)....17

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) ....................17, 18, 19

*Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*,
2018 WL 2727542 (Del. Ch. June 6, 2018) ....................8

*Edwards v. GigAcquisitions2, LLC*,
2025 WL 2092832 (Del. Ch. July 25, 2025), *aff'd*, 2026 WL 370125 (Del. Feb. 10, 2026) ....................14, 15, 16

*Ensminger v. Merritt Marine Const., Inc.*,
597 A.2d 854 (Del. Super. Ct. 1988) ....................15

*Evans v. Cantor Ins. Grp., LP.*,
2022 WL 3908005 (D. Del. Aug. 30, 2022) ....................6

*Firemen's Ret. Sys. of St. Louis v. Sorenson*,
2021 WL 4593777 (Del. Ch. Oct. 5, 2021) ....................14, 15, 16

*Fortis Advisors LLC v. Dialog Semiconductor PLC*,
2015 WL 401371 (Del. Ch. Jan. 30, 2015) ....................8, 10

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019) ....................8, 11

*Gould v. American-Hawaiian Steamship Co.*,
535 F.2d 761 (3d Cir. 1976) ....................19

*Harper v. O'Neal*,
746 F. Supp. 3d 1360 (S.D. Fla. 2024) ....................18

*Hiriam Hicks, Inc. v. Synagro WWT, LLC*,
867 F. Supp. 2d 676 (E.D. Pa. 2012) ....................16

*Kuhn Const. Co. v. Diamond State Port Corp.*,
2011 WL 1576691 (D. Del. Apr. 26, 2011) ....................12

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
844 F. Supp. 2d 519 (D. Del. 2012) ....................11, 13

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
854 A.2d 121 (Del. Ch. 2004) ....................12

*In re Mylan N.V. Sec. Litig.*,
2023 WL 3539371 (W.D. Pa. May 18, 2023) ....................14

*Narrowstep, Inc. v. Onstream Media Corp.*,
2010 WL 5422405 (Del. Ch. Dec. 22, 2010) ....................9

*New Shah, Inc. v. Shah*,
2000 WL 1728251 (D. Del. June 20, 2000) ........ 16

*U.S. ex rel. Piacentile v. Wolk*,
1995 WL 20833 (E.D. Pa. Jan. 17, 1995) ........ 13

*Pivotal Payments Direct Corp. v. Planet Payment, Inc.*,
2020 WL 7028597 (Del. Super. Ct. Nov. 30, 2020) ........ 15

*Purple Innovation, LLC v. Photon Interactive UK Ltd.*,
2025 WL 522464 (D. Del. Feb. 18, 2025) ........ 11

*REI Holdings, LLC v. LienClear-0001, LLC*,
2019 WL 3546881 (D. Del. Aug. 5, 2019) ........ 6, 7

*Richardson v. Jawahar et al.*,
2026 WL 2280904 (D. Del. Aug. 7, 2026) ........ 10

*Ruby Hollow, LLC v. Tharp & Assocs., LLC*,
2026 WL 2085808 (Del. Ch. July 20, 2026) ........ 16

*Seidl v. Artsana USA, Inc.*,
643 F. Supp. 3d 521 (E.D. Pa. 2022) ........ 13

*Skeway v. China Natural Gas, Inc.*,
2012 WL 2877645 (D. Del. July 6, 2012) ........ 18

*Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*,
739 F. Supp. 2d 686 (D. Del. 2010) ........ 19

*Stanley Black & Decker, Inc. v. Gulian*,
70 F. Supp. 3d 719 (D. Del. 2014) ........ 19

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ........ 14

*In re Tesla, Inc. Deriv. Litig.*,
2025 WL 3689114 (Del. Dec. 19, 2025) ........ 17

*Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*,
318 A.3d 450 (Del. Ch. 2024) ........ 11

*Truinject Corp. v. Nestle Skin Health, S.A.*,
2020 WL 70981 (D. Del. Jan. 7, 2020) ........ 12

*Trusa v. Nepo*,
2017 WL 1379594 (Del. Ch. Apr. 13, 2017) ........ 8

*Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*,
176 F. Supp. 3d 387 (D. Del. 2016) ........ 18, 19, 20

*Van Roy v. Sakhr Software Co.*,
2014 WL 3367275 (D. Del. July 8, 2014) ........ 10, 12

*VT Invs. v. R & D Funding Corp.*,
733 F. Supp. 823 (D.N.J. 1990) ........ 19

*Williams Rowland Acquisition Corp. v. Glob. Food & Ingredients Ltd.*,
2025 WL 1449010 (D. Del. May 20, 2025) ........ 9

**Statutes**

10 *Del. C.* § 8106 ........ 14

**Other Authorities**

Rule 9(b) ........ *passim*

Rule 10b-5 ........ 20

Rule 11 ........ 1

# I. INTRODUCTION

Plaintiffs' vague, generalized, and contradictory allegations concerning Selena Gomez demonstrate that Ms. Gomez could not possibly have engaged in any "fraud" (she did not), is not liable to Plaintiffs (she is not) and, as a matter of law, must be dismissed from this lawsuit. Indeed, Plaintiffs never should have sued Ms. Gomez at all—and their allegations as to Ms. Gomez are so egregiously improper and legally deficient that they raise the specter of Rule 11 sanctions against Plaintiffs. According to the Complaint itself, Ms. Gomez did not communicate with Plaintiffs, was not involved in Wondermind, Inc.'s (the "Company") securities offerings, and was not in a position to control the acts and communications of the Company. D.I. 1 (Compl.) ¶¶ 24, 36-42, 45, 55-57, 62-63, 68. The Complaint also fails to meet basic pleading standards as to Ms. Gomez and it must be dismissed as to her for multiple reasons:

*First*, Plaintiffs fail to identify any statements or material omissions that are attributable to Ms. Gomez, much less particularized allegations detailing actionable misrepresentations and why they are false, as required by Rule 9(b).

*Second*, Plaintiffs do not allege that Ms. Gomez was involved in any affirmative acts of concealment, nor can they state a viable claim with impermissible group pleading about actions generally taken by "Defendants."

*Third*, Plaintiffs fail to include any facts suggesting Ms. Gomez had an intent, or even motive and opportunity, to commit fraud. She did not. Indeed, Plaintiffs' own allegations confirm that Ms. Gomez was not involved and would have no knowledge regarding the alleged false statements.

*Fourth,* Plaintiffs do not assert that they justifiably relied upon any statement made by Ms. Gomez and instead claim that they made investment decisions based on representations *about* Ms. Gomez that Ms. Gomez did not make or endorse.

*Fifth*, Plaintiffs do not allege any involvement of Ms. Gomez after 2022, and they did not take any action on their purported claims until 2026, long after the statute of limitations expired.

*Sixth*, Plaintiffs concede that Ms. Gomez was not a "Key Employee" or board member,

and was not involved in day-to-day management of the Company. These allegations contradict Plaintiffs' "control person" claims and demonstrate that Ms. Gomez was not a culpable participant in any alleged securities fraud.

The Complaint focuses on the alleged acts or omissions of Wondermind and its co-CEOs, Mandy Teefey—and primarily Daniella Pierson. It alleges various counts of securities fraud in connection with Plaintiffs' investments, but (appropriately) does not name Ms. Gomez in the primary securities fraud allegations. For good reason. Plaintiffs admit that they met and discussed an investment in Wondermind with *Defendant Pierson*, and executed a Series A Preferred Stock Purchase Agreement ("SPA") based on the information provided *by Ms. Pierson*—Ms. Gomez was not involved. Compl. ¶¶ 36-42. Foreclosing any assertion that Ms. Gomez participated in the investment solicitation, the SPA details that Ms. Gomez was not a "Key Employee" or a member of Wondermind's board of directors. Compl. ¶¶ 54-57. Rather, the SPA provides that Wondermind would enter into a Consulting Agreement with Ms. Gomez regarding the services she would provide to the Company. *Id.* ¶¶ 62-63. Plaintiffs confirm that Ms. Gomez had a minority ownership interest in the Company of approximately 16% and was not vested with day-to-day management of the Company. *Id.* ¶¶ 22-24. And the Complaint goes on to reference the alleged fraudulent conduct not of Ms. Gomez (there was no such conduct) but instead *of Ms. Pierson*, *e.g.,* "the members of Bespoke, met with *Pierson* in New York City to discuss Bespoke's potential investment," *id.* ¶ 36; "*Pierson* told [Plaintiffs] that Ms. Gomez would not be a mere figurehead," *id.* ¶ 38; "*Pierson* told [Plaintiffs] that she had already secured business partnerships with several large employers," *id.* ¶ 39; "the impression that *Pierson* conveyed [] was that Wondermind was in capable hands under her stewardship," *id.* ¶ 40.

Despite Ms. Gomez's attenuated role, Plaintiffs include her as a defendant and wrongly claim she is liable for the underlying securities fraud as a "control person" of the Company. Alternatively, they claim Ms. Gomez could be liable for some type of common law fraud that does not qualify as securities fraud. But Plaintiffs do not allege they even interacted with Ms. Gomez directly and fail to identify any of the following, as required under Delaware law:

- What exactly Ms. Gomez did that would make her liable for fraud (nothing).
- What exactly Ms. Gomez concealed that would make her liable for fraud (nothing).
- When, how, and where Ms. Gomez's alleged representations or concealments were made (there were none).

Rather than confronting these basic failings, Plaintiffs resort to vague, deficient theories based on statements supposedly made *about* Ms. Gomez or, even more speculatively, a claim that Ms. Gomez allegedly did not fulfill her duties to Wondermind under a contract between Wondermind and Ms. Gomez that Plaintiffs have never even seen. Plaintiffs' threadbare, speculative claims regarding Ms. Gomez demonstrate that they have no cognizable claims against her and confirm that they named Ms. Gomez as a defendant based on association, so they could garner media attention and publicity, and not on specific, detailed, particularized *facts*. (Plaintiffs have now proven this by sophomorically leaking a false, improper statement to *TMZ*, solely for publicity.)

The notion that Ms. Gomez engaged in any form of "fraud" is absurd. She should never have been dragged into this action and we respectfully submit she must be dismissed.

## II. <u>NATURE AND STAGE OF PROCEEDINGS</u>

On August 13, 2026, Plaintiffs filed this Complaint against Wondermind, Ms. Teefey, Ms. Pierson, and Ms. Gomez (together, the "Individual Defendants"). The Complaint asserts eleven causes of action, but Ms. Gomez is named only in the following counts: (1) a claim for purported control person liability under Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against the Individual Defendants (Count II); (2) two claims for common law fraud against all Defendants (Counts IV and X); and (3) one count of equitable fraud against all Defendants (Count XI). *See id.* Ms. Gomez moves to dismiss each of the claims against her with prejudice (Counts II, IV, X-XI).

## III. <u>SUMMARY OF ARGUMENT</u>

1. Plaintiffs cannot plead a viable common law or equitable fraud claim against Ms.

Gomez because: (1) the Complaint does not attribute any false statements, misrepresentations, or omissions to Ms. Gomez; (2) the Complaint attributes no affirmative acts of concealment to Ms. Gomez; (3) Plaintiffs fail to plead any facts even suggesting Ms. Gomez acted with scienter, the required state of mind for fraud; (4) Plaintiffs do not plead that they relied on any statements made by Ms. Gomez, let alone that their reliance was justified; and (5) any claims based on misrepresentations or concealment from 2022 are time-barred.

2. Further, Plaintiffs cannot state a control person liability claim against Ms. Gomez because: (1) their securities fraud allegations contradict this claim insofar as the Complaint alleges Ms. Gomez did not play any active role in the Company's operations; (2) there are no facts suggesting Ms. Gomez was even aware of any alleged underlying fraud, much less that she took any affirmative steps in furtherance of fraud; and (3) the Complaint fails to adequately plead a predicate violation of federal securities law.

## IV. STATEMENT OF FACTS[1]

### A. Ms. Gomez Invests In Wondermind

Ms. Gomez is a widely admired, world-renowned singer, songwriter, producer, actress, and businesswoman. Compl. at 1, ¶ 23. To her credit, she has publicly shared her own struggles and journey with mental health in order to draw attention to the issue. *Id.* With this vision in mind, Ms. Gomez agreed to support her mother Mandy Teefey, who co-founded Wondermind. *Id.* ¶¶ 23-26, 68. The Company launched in 2021 with the purpose of creating a mental health ecosystem where people could access mental health resources, listen to celebrities share their own mental health journeys, and obtain other related wellness products. *Id.* at 1-2, ¶¶ 23, 32. Although she invested in and holds a minority stake in the Company, Ms. Gomez never agreed to and did not manage the Company. *Id.* ¶¶ 23-26. Management was vested in Ms. Gomez's mother, Mandy Teefey, and Ms. Pierson, who ran the Company as co-CEOs and board members. *Id.* The Company, in turn, retained Ms. Gomez as a consultant and conferred on her the title of

[1] Ms. Gomez does not admit or concede that any factual allegation in the Complaint is true or accurate. She expressly reserves the right to dispute all of the Complaint's allegations.

Chief Impact Officer ("CIO"). *Id.* ¶¶ 23, 62.

**B. Plaintiffs Invest In Wondermind**

The Company opened its first Series A offering in the spring of 2022. *Id.* ¶ 30. Plaintiffs allege that the Company provided potential investors with a pitch deck disclosing that Wondermind had "ZERO users," "ZERO launched products," and "ZERO revenue," *Id.* ¶¶ 28-29, 35. They further allege they met with Pierson on two occasions in or around May 2022 to discuss their potential investment in the Company. *Id.* ¶¶ 36-41. Plaintiff Wondermind SRS 44, LLC invested $425,000 that same month and executed an SPA. *Id.* ¶¶ 47-49.

According to the Complaint, Pierson then sent a June 6, 2022 email to Plaintiffs attaching a "pre-launch investment 2-pager" promoting the Company's progress and operational structure. *Id.* ¶¶ 42-43. The "pre-launch investment 2-pager" detailed that the Company had hired individuals to fill 15 senior leadership positions. *Id.* ¶ 42. Ms. Gomez was not listed among the individuals hired. *Id.*

Ms. Teefey and Ms. Pierson countersigned each SPA on behalf of the Company in their capacities as co-CEOs. *Id.* ¶ 58. They were not signed by Ms. Gomez. *Id.* Each SPA purportedly represented and warranted that certain "Key Employees" would remain employed by the Company. *Id.* ¶¶ 55-57. Ms. Gomez was not identified as a Key Employee. *Id.*

Following their investment, Plaintiffs assert that *GMA* reported on a statement purportedly made by Ms. Pierson, Ms. Teefey, and Ms. Gomez on Instagram explaining how Wondermind planned to use funds raised from investors. *Id.* ¶ 32. Four months later, Ms. Pierson sent a December 2022 email to Plaintiff Bespoke allegedly copying Ms. Gomez, stating that Wondermind had experienced "massive growth" and exceeded one-year goals. *Id.* ¶¶ 45-46. Plaintiffs claim that they had "several emails and phone calls" with "Defendants" between 2022 and 2025. *Id.* ¶¶ 71, 155(ii), 165(ii). Plaintiffs fail to allege that Ms. Gomez was one of these Defendants or that they ever spoke to Ms. Gomez directly. *Id.* ¶¶ 30-46, 90-97. The Complaint is devoid of the content of any statement made by Ms. Gomez to anyone.

### C. "*The Cut*" Publishes A September 2025 Story About Wondermind

On September 3, 2025, *The Cut* published a story about Wondermind. *Id.* ¶ 80. The story reported that Ms. Teefey had taken steps to show Wondermind was wholly independent from Ms. Gomez, and that Ms. Gomez was not interested in assuming a more active role. *Id.* ¶¶ 15, 82. Plaintiffs claim that after reading the story they emailed Ms. Teefey between November 2025 and April 2026 to demand rescission of the SPA and the return of their investments. *Id.* ¶¶ 90-96. They do not allege that Ms. Gomez was privy to those communications, or even that they directly engaged with Ms. Gomez in any form. *Id.*

## V. ARGUMENT

To survive a motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant acted unlawfully." *Id.* The Court need not accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. "Where a plaintiff's own pleading is internally inconsistent and contradictory, the court is not obligated to reconcile or accept such contradictory allegations." *Bocker v. Hartzell Engine Techs., LLC*, 2023 WL 415792, at *4 (D. Del. Jan. 26, 2023). Under FRCP 9(b), the Complaint must identify, with particularity, the specific statements made by each defendant and specify how each defendant's actions breached a duty owed to Plaintiffs. *Evans v. Cantor Ins. Grp., LP.*, 2022 WL 3908005, at *4 (D. Del. Aug. 30, 2022) ("Rule 9(b) requires [] allegations of date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation."); *REI Holdings, LLC v. LienClear-0001, LLC*, 2019 WL 3546881, at *6 (D. Del. Aug. 5, 2019) ("A complaint is not sufficient where a plaintiff bundles together all defendants under a claim of fraud and omits specific allegations regarding who had a duty to disclose and who breached such a duty.").

Plaintiffs fail to satisfy these basic standards as to Ms. Gomez and cannot state any claim as to Ms. Gomez. They impermissibly "bundle[] together all defendants," omitting any

specificity at all concerning Ms. Gomez. *REI Holdings*, *LLC*, 2019 WL 3546881, at *6. Plaintiffs' vague, passive, non-actionable allegations regarding Ms. Gomez are:

- Ms. Gomez "spoke at length" about Wondermind and her personal mental health journey in an April 2022 interview that aired before the Company's Series A offering opened. Compl. ¶ 32.
- In August 2022, the "Defendants" posted a statement on Instagram, which was later reported by *GMA*, saying the Series A funding would "be used to accelerate the building of Wondermind's mental fitness ecosystem." *Id.* ¶ 32.
- Ms. Pierson carbon copied Ms. Gomez on a December 2022 email that attached a pitch deck for the Company's Series B offering. *Id.* ¶ 45.
- Ms. Gomez's LinkedIn profile identified her as "Wondermind's CIO or 'Chief Impact' Officer." *Id.* ¶ 23.
- "Defendants" purportedly made statements *about* Ms. Gomez's involvement in Wondermind, such as statements that she would play a "central role" or serve as "head of marketing." *Id.* ¶¶ 29, 38, 44, 60, 82 (detailing purported statements about Gomez). The Complaint does not allege that Ms. Gomez was aware of these statements.

### A. <u>Plaintiffs Fail To State A Common Law Fraud Claim Against Ms. Gomez</u>

To state a claim for common law fraud, Plaintiffs must plead facts showing that: "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006). The Complaint fails to satisfy any of these elements as to Ms. Gomez, especially under the heightened pleading standards required by FRCP 9(b).

#### 1. <u>No Alleged False Statements Or Material Omissions Are Attributable To Ms. Gomez</u>

In contravention of FRCP 9(b), the Complaint does not contain any actionable statement made by Ms. Gomez, much less plead particularized factual allegations detailing "the time, place and contents of [any] false representation" attributable to Ms. Gomez and why any

representations attributable to Ms. Gomez are allegedly false. *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *6-7 (dismissing claims that did not identify "which [individual] allegedly made which statements, or where or when any of these statements were made"). The Complaint identifies alleged statements by Pierson, Teefey, Wondermind, or generalized, bundled "Individual Defendants," but does not plead with particularity a false statement authored, transmitted, or personally made by Ms. Gomez to Plaintiffs. *See Bartesch v. Cook*, 941 F. Supp. 2d 501, 510 (D. Del. 2013) (dismissing complaint where allegations referred generally to "defendants" or "company executives"). Plaintiffs' inability to attribute, much less *particularize*, any false statements or misrepresentations to Ms. Gomez mandates dismissal of this claim. *Trusa v. Nepo*, 2017 WL 1379594, at *9 (Del. Ch. Apr. 13, 2017) (dismissing claims that "lump together defendants" and fail to "identify who made a particular misrepresentation").

Moreover, there are no facts suggesting that the allegedly concealed information—*e.g.*, the purportedly "long-running, undisclosed personal disputes between Teefey and Gomez" and Wondermind's "financial and operational turmoil"—had materialized when Plaintiffs executed the SPA in May-June 2022. Compl. ¶¶ 88, 100(i). Rather, Plaintiffs rely on allegations that begin in "the summer of 2023," from the article published by *The Cut*. *Id.* ¶ 85. This was a full year after Plaintiffs' initial investment and months after the latest statement attributed to Ms. Gomez. *Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *12 (Del. Ch. June 6, 2018) (dismissing fraud claim where the allegedly concealed facts were "not *knowable* at the time [the defendants] made the representations") (emphasis in original).

Plaintiffs also cannot state a claim against Ms. Gomez for an alleged failure to correct statements made by other individuals. General allegations *about* Ms. Gomez—that others stated Ms. Gomez was involved with Wondermind, that she appeared in brand-related materials, that she was copied on communications, or that she was otherwise publicly associated with the Company—do not establish the requisite involvement. *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 219 (S.D.N.Y. 2019) (rejecting claims against founder who directed Company management because "he is not alleged to have participated in any negotiations with plaintiffs");

*Williams Rowland Acquisition Corp. v. Glob. Food & Ingredients Ltd.*, 2025 WL 1449010, at *5 (D. Del. May 20, 2025) (non-parties to agreement had "no duty to speak"). Without any allegations of active participation (there was none), the claims against Ms. Gomez fail.

Finally, Plaintiffs' throwaway allegations that Ms. Gomez "never entered into" and/or "utterly breached her contractual duties" under a purported "Consulting Agreement" between Ms. Gomez and Wondermind do not state a claim for fraud against Ms. Gomez. Compl. ¶¶ 68, 82, 132. Ms. Gomez never made a statement to Plaintiffs that is made false by virtue of any contract with Wondermind. And regardless of the terms of any such agreement, Plaintiffs have no right to assert the breach of a contract to which they were indisputably not a party. Delaware courts uniformly reject attempts to "bootstrap" a breach of contract claim into a fraud claim. *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010) ("[C]ouching an alleged failure to comply with a contract as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is exactly the type of bootstrapping this Court will not entertain.") (quotation omitted).

2. Plaintiffs Fail To Allege Any Post-Investment "Concealment" By Ms. Gomez

Plaintiffs' assertion of common law fraud against all Defendants based on purported post-investment "misrepresentations and concealment" regarding "the state of Wondermind's operations, finances, and managerial issues" (Count X) is equally meritless against Ms. Gomez. Compl. ¶¶ 153, 163. As an initial matter, Plaintiffs do not directly attribute any of the alleged post-investment misrepresentations or acts of concealment *to* Ms. Gomez. Compl. ¶¶ 155, 165. Instead, they allege that the bundled "Defendants" collectively "concealed and misrepresented the state of the Company's operations" via "several emails and phone calls from 2022 to 2025." *Id.* ¶¶ 154(ii), 165(ii). But Plaintiffs do not allege any direct communications with Ms. Gomez. *Id.* ¶¶ 30-46, 71-74, 90-97. A conclusory statement that "Defendants" concealed unspecified information at some point during a three-year window does not satisfy Plaintiffs' burden to state

a claim against Ms. Gomez. *Fortis*, 2015 WL 401371, at *6 (alleging "misrepresentations occurred at some time during a period of approximately 3-1/2 months" violated Rule 9(b)).

The only post-investment statement that Plaintiffs attribute to Gomez is an August 2022 Instagram post (purportedly by the Individual Defendants) that Wondermind planned to use its funding to "accelerate the building" of Wondermind's systems. Compl. ¶ 32. Plaintiffs do not and cannot allege contemporaneous *facts* that could make this statement false. Even if Plaintiffs could find some falsity in this statement about August 2022 plans, this is precisely the type of "vague, forward-looking statement[]" that Delaware courts routinely find not actionable at the pleading stage. *See Richardson v. Jawahar et al.,* 2026 WL 2280904, at *9 (D. Del. Aug. 7, 2026) (dismissing "generalized" statements that "[t]he Fund will seek to invest in early-stage financings" and "intends to invest opportunistically in what it believes to be high-quality, high-potential early-stage beauty and wellness companies"); *Anthemis Venture Fund II S.C.Sp. v. Victory Park Cap. Advisors, LLC*, 2025 WL 3688703, at *5 (Del. Ch. Dec. 19, 2025) (statement that "the business has runway to capitalize on the new equity" was inactionable).

Plaintiffs also assert that Ms. Gomez was copied on Ms. Pierson's December 2022 email regarding Wondermind's early goals and growth. Compl. ¶¶ 155(i), 165(i). But claims against *Ms. Gomez* concerning *Ms. Pierson's* statement fail for multiple reasons. *First*, Ms. Gomez is not alleged to have participated in this statement and there is no allegation suggesting that Ms. Gomez read this statement, had any responsibility for its content, or was even aware of it. *Sakhr Software Co.*, 2014 WL 3367275, at *5 (D. Del. July 8, 2014) (dismissing claims that did not "allege sufficient facts from which it can be reasonably inferred that [the misrepresentation] was knowable and that the defendants were in a position to know it"). *Second*, Plaintiffs do not even allege anything *Ms. Pierson* said was false at the time of the statement. There are no allegations that Wondermind had *not* experienced growth, closed revenue, received contact from funds, and exceeded its early goals in December 2022. Compl. ¶¶ 45-46; *see also id.* ¶ 83 (alleging financial issues materialized "by the summer of 2023"). *Third*, general, non-quantifiable statements about "massive" growth "exceed[ing]" unspecified goals, or receiving contact from

"several" funds are inactionable "vague statement[s] of corporate optimism" and puffery. *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 464 (Del. Ch. 2024); *Purple Innovation, LLC v. Photon Interactive UK Ltd.*, 2025 WL 522464, at *3 (D. Del. Feb. 18, 2025) (holding statements were inactionable because they did not misstate facts "that can be measured or known"). *Fourth*, to the extent there was some quantifiable statement sufficiently alleged to be false at the time it was made, Plaintiffs do not and cannot allege that Ms. Gomez was aware of such falsity and had some duty to correct it. *In re Celgene Corp., Inc. Sec. Litig.*, 747 F. Supp. 3d 748, 799 n.65 (D.N.J. 2024) (dismissing claims against a managing director because he "could not be expected to correct what he did not know about").

At its core, the Complaint asks this Court to hold Ms. Gomez liable for "fraud" because they generally claim—without supporting factual allegations—that she "must have known" of the Company's "actual operational and financial condition." Compl. ¶¶ 159, 168. But the mere fact that Ms. Gomez—who is literally one of the world's busiest women—might have had the ability to request information by virtue of being a co-founder/consultant is not enough to "plausibly allege . . . a duty to disclose." *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 218-19 (rejecting "fraud by omission/concealment" allegations against the "chief marketing officer responsible for overseeing marketing and branding strategy"). The lack of a *single allegation* that Ms. Gomez ever said *anything* about Wondermind's operational state or financial condition—or any allegations stating that Ms. Gomez was privy to the other Defendants' communications with Plaintiffs—requires dismissal of the fraud claims against Ms. Gomez.

3. <u>Plaintiffs Fail To Plead Scienter</u>

Even if Plaintiffs could identify a false statement attributable to Ms. Gomez (they cannot), to satisfy the essential element of scienter, their Complaint still must plead particularized facts supporting an inference that Ms. Gomez had an intent to deceive. *Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 530 (D. Del. 2012). Alleging scienter requires particularized facts "indicating conscious or reckless behavior by the

defendant, or facts showing a motive or clear opportunity for committing fraud." *Kuhn Const. Co. v. Diamond State Port Corp.,* 2011 WL 1576691, at *9 (D. Del. Apr. 26, 2011).

Plaintiffs' scienter allegations fail because, again, they rely on "impermissible 'group pleading' allegations that make no effort whatsoever to plead particularized allegations of wrongdoing as to" Ms. Gomez. *In re Cendant Corp. Sec. Litig.*, 190 F.R.D. 331, 335 (D.N.J. 1999) (emphasis in original). The Complaint's reliance on collective references to "defendants," "individual defendants," or "company insiders" is insufficient because group pleading does not satisfy Rule 9(b) where the pleading fails to identify any specific alleged misstatement, omission, or deceptive act by Ms. Gomez. *See Truinject Corp. v. Nestle Skin Health, S.A.*, 2020 WL 70981, at *10 (D. Del. Jan. 7, 2020) (dismissing complaint that "bundles together in its fraud claim all of its allegations against all of the Corporate Defendants rather than allege specific acts by each Corporate Defendant" as "insufficient under Rule 9(b)").

Furthermore, Plaintiffs claim that all of the Defendants collectively "knew that the misrepresentations were false when made, or at minimum, [] acted recklessly with respect to the truth or falsity of the representations," Compl. ¶ 121, but do not include a single allegation explaining *Ms. Gomez's* involvement in the investment solicitation process or direct awareness of any purported fraud. *In re Cendant Corp.*, 190 F.R.D. at 335 (rejecting "conclusory pleading" that simply "rel[ied] upon these defendants' positions" to establish scienter). Plaintiffs' "threadbare recital of the scienter/knowledge elements of Delaware [] common law fraud" is not enough. *Van Roy v. Sakhr Software Co.*, 2014 WL 3367275, at *5 (D. Del. July 8, 2014); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 144, 148 (Del. Ch. 2004) (rejecting general averments that "Defendant knew or should have known" because "ordinary negligence is insufficient to support a claim of common fraud").

Plaintiffs also offer zero allegations evidencing that Ms. Gomez had a "motive or clear opportunity for committing fraud," which, of course, she did not. *Diamond State Port Corp.*, 2011 WL 1576691, at *9. To the contrary, Plaintiffs allege that Ms. Gomez "actively distance[d]" herself and did not play any role in the "day-to-day management of the Company."

Compl. ¶¶ 24, 63. There are no allegations implicating her involvement in the SPA negotiations. And the purported existence of Ms. Gomez's alleged "long-running personal struggles with her mother" does nothing to establish Ms. Gomez's involvement in any activity related to Plaintiffs' investment. *Id.* ¶¶ 15, 63, 82. If anything, this fact would confirm the opposite. *Id.* ¶ 82 (alleging this "dispute" caused Ms. Teefey "to show that the Company was independent from Gomez").

In short, according to Plaintiffs' own Complaint, Ms. Gomez's only alleged involvement is support for the Company or other individuals' promotional statements about activities *they claimed* she was expected to perform. Allegations like these, which neither detail a specific challenged statement nor connect to the underlying investment or challenged statements, do not plead fraud. At most, they may describe publicity or contractual performance issues involving the company or a consultant, but breach of contract, nonperformance, or disappointed expectations do not transmogrify into fraud absent a particularized false statement made with scienter and intent to induce reliance by plaintiffs. *See, e.g., U.S. ex rel. Piacentile v. Wolk*, 1995 WL 20833, at *4 (E.D. Pa. Jan. 17, 1995) ("[I]f any officer did not personally participate in a corporation's activity, the law does not subject him to liability simply by virtue of his office."). Ultimately, it is unreasonable to infer that an individual who intentionally distances herself from a company, does not have and never had a management role, and played no role in soliciting the underlying investment had any intent, motive or opportunity to commit fraud. *Coastal Consultants*, 844 F. Supp. 2d at 530 (dismissing fraud claims that "have not alleged or explained [] what motivation [defendant] would have for making these knowingly false representations").

4. <u>Plaintiffs Have Not Plead, And Cannot Plead, Justifiable Reliance</u>

When assessing common law fraud claims, the Court may not presume justifiable reliance. *Yarger v. ING Bank, fsb*, 285 F.R.D. 308, 327 (D. Del. 2012). Here, Plaintiffs do not allege that they saw any purported statement made by Ms. Gomez *before* their investment, much less do they describe exactly what Ms. Gomez said that prompted their justifiable reliance. The Complaint's failure to do so is fatal and provides yet another independent basis for dismissal. *See Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 532 (E.D. Pa. 2022) (finding reliance was

unjustified when plaintiff did "not allege that she relied on or even saw" the press release); *In re Suprema Specialties, Inc. Sec. Litig.,* 438 F.3d 256, 284 (3d Cir. 2006) (dismissing allegations that plaintiffs "received, reviewed, actually read, and relied upon" various SEC filings as failing "to plead facts probative of [] actual reliance on any specific false statements").

Any claimed reliance on a *GMA* interview published four months before a stock purchase negotiated directly with the Company's CEO is, on its face, unjustified. *In re Mylan N.V. Sec. Litig.,* 2023 WL 3539371, at *9 (W.D. Pa. May 18, 2023). Accordingly, Plaintiffs appear to allege reliance on statements attributed to individuals *other than* Ms. Gomez or more broadly to the Company. Compl. ¶¶ 38-43, 82-90, 100, 113, 119, 155, 165. But alleged reliance on statements by others cannot sustain a claim against *Ms. Gomez*. Because the Complaint fails to identify any specific statement *by Ms. Gomez*, which Plaintiffs knew about, relied upon, and justifiably treated as material to their investment decision, the fraud claims against Ms. Gomez must be dismissed.

5. Any Common Law Fraud Claim Is Time-Barred

Even putting aside Plaintiffs' egregious pleading deficiencies, their common law fraud claims must be dismissed because they are time-barred. The three-year statute of limitations "accrues when the alleged misrepresentations were made" but "no later than the date of the contract's execution." *Edwards v. GigAcquisitions2, LLC*, 2025 WL 2092832, at *14 (Del. Ch. July 25, 2025), *aff'd*, 2026 WL 370125 (Del. Feb. 10, 2026). The common law fraud claims are therefore presumptively time-barred because the fraudulent inducement claims indisputably accrued no later than June 2022, when Plaintiffs allege they executed the SPA, and the post-investment concealment claims accrued no later than December 2022 when Ms. Gomez was last copied on communications with Plaintiffs. *Id.* ("Claims filed beyond the statutory limitations period are presumptively barred."); 10 *Del. C.* § 8106; Compl. ¶ 47.

Plaintiffs assert they should be excused from their failure to timely file, but they do not meet their "burden to plead *specific facts* demonstrating that the statute of limitations was tolled." *Firemen's Ret. Sys. of St. Louis v. Sorenson*, 2021 WL 4593777, at *9 (Del. Ch. Oct. 5,

2021) (emphasis added). Delaware recognizes "three doctrines that may toll the statute of limitations: (1) fraudulent concealment; (2) inherent unknowable injury; and (3) equitable tolling." *Edwards*, 2025 WL 2092832, at *14. None of these doctrines applies.

In order to toll claims against Ms. Gomez as a result of fraudulent concealment, Plaintiffs must plead *facts* demonstrating that Ms. Gomez concealed "information through an affirmative act." *Sorenson*, 2021 WL 4593777, at *9. Plaintiffs fail to plead how speaking "at length" about mental health in a public interview, Compl. ¶ 32, or truthfully including a conferred title on LinkedIn, *id.* ¶ 23, could be "meant to throw stockholders off the trail of inquiry." *Sorenson,* 2021 WL 4593777, at *10. Neither of these allegations, nor any of the other allegations attributed to Ms. Gomez, constitute affirmative acts concealing information at the time of the investment. *Ensminger v. Merritt Marine Const., Inc.*, 597 A.2d 854, 855 (Del. Super. Ct. 1988) (dismissing time-barred claims for failure to "allege facts with sufficient specificity to indicate a defendant affirmatively acted to mislead"). And to the extent Plaintiffs base their claims on statements made by others about Ms. Gomez, as a matter of law, her "silence is insufficient" to toll the statute of limitations. *Sorenson,* 2021 WL 4593777, at *10 (quotation omitted).

Plaintiffs also cannot toll the statute of limitations by claiming that their injury was inherently "unknowable," because they were on inquiry notice regarding the asserted issues at the time they signed the SPA and nothing was done to prevent their ability to make a reasonable inquiry, which they failed to do. *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2020 WL 7028597, at *6 (Del. Super. Ct. Nov. 30, 2020) ("No theory tolls the statute of limitations further once the plaintiff is on inquiry notice."). Plaintiffs admit that they invested in a speculative start-up Company with "**ZERO** users," "**ZERO** launched products," and "**ZERO** revenue." Compl. ¶ 28 (bold emphasis added); *see also id.* ¶¶ 66-67. Plaintiffs' laxness does not make their injuries inherently unknowable.

With regard to allegations concerning Ms. Gomez, Plaintiffs assert they could not have discovered Ms. Gomez's alleged lack of "major operational involvement in the Company," *id.* ¶ 15, but they admit to *knowing* Ms. Gomez: (1) was not "vest[ed] day-to-day management of the

Company," *id.* ¶ 24; and (2) was neither a board member nor a "Key Employee," *id.* ¶¶ 55-57, 68. The lack of any pre-investment communications with Ms. Gomez coupled with Plaintiffs' admissions concerning contradictory information precludes any tolling of claims against Ms. Gomez under the inherently unknowable doctrine. *Edwards*, 2025 WL 2092832, at *18 (holding "potential inaccuracies in the presentations" put investors on inquiry notice and that failing to request additional financial information "does not make any injury suffered inherently unknowable"); *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *9 (Del. Ch. July 17, 1998) ("The presence of [] inherently contradictory information" in investment materials put "plaintiffs on inquiry notice[.]"), *aff'd*, 725 A.2d 441 (Del. 1999).

Finally, Plaintiffs fail to meet their burden to plead equitable tolling. "[E]quitable tolling operates in much the same way as the doctrine of fraudulent concealment, and an affirmative act of concealment is required." *Sorenson,* 2021 WL 4593777, at *10 (quotation omitted). Plaintiffs' failure to plead that Ms. Gomez engaged in any affirmative acts of concealment (she did not) necessarily forecloses any equitable tolling argument. The allegation that "the Individual Defendants owed the Plaintiffs the fiduciary duties of care, loyalty, and good faith" cannot save this argument. Compl. ¶ 19. Plaintiffs admit that Ms. Gomez did not negotiate or execute the SPA. *Id.* ¶¶ 30-42, 58. Even if she had, it is well-settled that contractual counterparties are not owed any fiduciary duties. *Edwards*, 2025 WL 2092832, at *18 ("[Plaintiffs] were owed no duty by the [] Defendants . . . their counterparties in the negotiations."); *see also New Shah, Inc. v. Shah*, 2000 WL 1728251, at *8 (D. Del. June 20, 2000) ("[D]efendant negotiated the stock purchase agreement, and made the allegedly fraudulent representations and omissions, as Plaintiffs' contract opponent, not as their fiduciary."). Plaintiffs also admit that Ms. Gomez was a minority shareholder and served as a consultant to the Company. Compl. ¶¶ 23, 62-63. These roles do not establish any fiduciary relationship. *Ruby Hollow, LLC v. Tharp & Assocs., LLC*, 2026 WL 2085808, at *3 (Del. Ch. July 20, 2026) (holding investors did not owe any fiduciary duties by virtue of their minority stake); *Hiriam*

*Hicks, Inc. v. Synagro WWT, LLC*, 867 F. Supp. 2d 676, 695 (E.D. Pa. 2012) ("[t]he mere existence of a contract for services" does not create an agency or fiduciary relationship).

6. Plaintiffs Fail To State A Claim For Equitable Fraud

In a last-ditch effort to state a claim, Plaintiffs allege equitable fraud (Count XI) against all Defendants based on the same purported misrepresentations and concealment discussed above. *Compare* Compl. ¶¶ 162-70 *with* ¶¶ 152-61. Equitable fraud "requires proof of all of the elements of common law fraud except that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly." *Diem-II, LLC v. Maisonette Inc.*, 2026 WL 922982, at *19 (Del. Ch. Apr. 6, 2026) (internal quotations omitted). Plaintiffs nevertheless must plead "either (i) a special relationship between the parties over which equity takes jurisdiction (like a fiduciary relationship) or (ii) justification for a remedy that only equity can afford." *Id.*

Plaintiffs' equitable fraud claim must be dismissed because Plaintiffs did not plausibly allege an actionable misrepresentation, scienter, or justifiable reliance. Additionally, Plaintiffs fail to plead the existence of a fiduciary relationship with Ms. Gomez. Finally, the claim fails because Plaintiffs do not explain why *legal* rescission of the SPA and money damages would be insufficient *See In re Tesla, Inc. Deriv. Litig.*, 2025 WL 3689114, at *11 (Del. Dec. 19, 2025) ("[L]egal rescission is awarded by courts of law to invalidate a contract and award the plaintiff money or property of which they have been deprived.").

**B. Plaintiffs' Securities Fraud Control Person Liability Claim Fails**

Recognizing that Ms. Gomez had no involvement in the solicitation of their investments, Plaintiffs do not allege that Ms. Gomez has any primary liability for their securities fraud claims. In an ill-fated attempt to connect Ms. Gomez to these claims, Plaintiffs assert that Ms. Gomez is liable as a "control person" despite her lack of involvement in the alleged underlying activity. In order to plead control person liability, Plaintiffs must establish (1) an "underlying violation" of federal securities laws by "a controlling person or entity"; (2) that Ms. Gomez is a "controlling person[]"; and (3) that Ms. Gomez was "in some meaningful sense [a] culpable participant[] in the fraud." *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560-61 (D. Del. 2002), *aff'd*,

357 F.3d 322 (3d Cir. 2004). "[T]he heightened pleading standard of the PSLRA requires" Plaintiffs to "state with particularity the circumstances of both [Ms. Gomez's] control of the primary violator, as well as of [Ms. Gomez's] culpability as [a] controlling person[]." *Id.* at 561; *Skeway v. China Natural Gas, Inc.*, 2012 WL 2877645, at *1–2 (D. Del. July 6, 2012) (dismissing claims that failed to "state with particularity the circumstances of the defendant's control of the primary violator"). The Complaint fails at every level.

1. Plaintiffs Concede Ms. Gomez Did Not Control Wondermind

Plaintiffs do not and cannot meet the standard for asserting that Ms. Gomez had actual control over Wondermind. Establishing actionable control requires allegations that Ms. Gomez possessed "the power to direct or cause the direction of [a company's] management and policies." *Universal Am. Corp. v. Partners Healthcare Sols. Holdings, L.P.*, 176 F. Supp. 3d 387, 399 (D. Del. 2016). The Complaint alleges the exact opposite. Specifically, Plaintiffs detail that Ms. Gomez was *not* actually involved in "day-to-day management of the Company" because of "demands on [her] time" or general "disinterest[]" in doing so. *Id.* ¶¶ 24, 82. It further alleges that Ms. Gomez had a minority interest of approximately 16% in the Company and no board position, and that her involvement with Wondermind was established through a Consulting Agreement. *Id.* ¶¶ 23, 62-63. Ms. Gomez did not hold an executive employment position or other full-time role. Far from alleging facts that Ms. Gomez could or did direct the Company, Plaintiffs claim that the Company's CEO took steps to "show that the Company was independent from Gomez," *id.* ¶ 82; and that "personal disputes" rendered Ms. Gomez's "involvement impracticable," *id.* ¶¶ 100(i), 113(i), 119(i). Such contradictory allegations foreclose Plaintiffs' control person liability claim. *Harper v. O'Neal*, 746 F. Supp. 3d 1360, 1366, 1372 (S.D. Fla. 2024) (dismissing control liability claims against the celebrity founder, promoter, and "face" of a company for failure to allege that he "participated in the day-to-day affairs of the corporation").

Even if Plaintiffs could explain away this patent contradiction (they cannot), the Complaint's lone, conclusory allegation that all of the Individual Defendants exerted control over Wondermind because they are "officers, directors, and collective majority shareholders"

cannot state a claim against Ms. Gomez. Compl. ¶ 109. Under well-settled law, it is insufficient to simply reference a defendant's purported status as an officer, director, or minority shareholder. *See In re Digital Island*, 223 F. Supp. 2d at 562 (dismissing control person claims because "it is well-settled that the mere fact that an individual is a director of a firm is not sufficient to show [s]he is a controlling person"); *Copland v. Grumet*, 1998 WL 256654, at *14 (D.N.J. Jan. 9, 1998) (dismissing control person claims because "[t]he mere fact of [minority] stock ownership does not transform an individual into a controlling person").

2. Plaintiffs Do Not Plead Ms. Gomez Was A Culpable Participant

Plaintiffs' claim fails for the additional and independent reason that they do not allege Ms. Gomez was a culpable participant in the alleged fraud. Culpable participation requires the defendant's "knowledge of the wrongful conduct" and "knowing and substantial participation in the wrongdoing." *VT Invs. v. R & D Funding Corp.*, 733 F. Supp. 823, 841 (D.N.J. 1990) (*citing Gould v. American-Hawaiian Steamship Co.,* 535 F.2d 761, 779 (3d Cir. 1976)). Pleading a defendant's "*knowledge* of the facts underlying the fraud, or even knowledge of the fraud itself" does not suffice; rather, the Complaint must contain particularized facts establishing that any "inaction was deliberate and done intentionally to further the underlying fraud." *Universal Am. Corp.*, 176 F. Supp. 3d at 400 (cleaned up) (emphasis in original).

Here, the Complaint does not contain any particularized allegations regarding Ms. Gomez's culpability. *In re Digital Island*, 223 F. Supp. 2d at 562 (dismissing "conclusory allegations" that defendants participated in fraud "due to their Board or managerial positions" as "utterly lacking in any details as to when or how [culpable participation] occurred"); *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 708 (D. Del. 2010) (dismissing control liability claims because the "allegations within the complaint directed towards 'defendants' collectively impermissibly rely on group pleading"). Nor are there any allegations establishing Ms. Gomez's actual knowledge of any alleged fraud. *Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 732 (D. Del. 2014) (dismissing claims where the complaint "provides no allegations as to how [defendant] specifically knew about" the fraud). The only

allegation Plaintiffs muster against Ms. Gomez is that she was copied on a single email Ms. Pierson sent to Plaintiffs. Compl. ¶ 45. As discussed in Section V.A.2, the Complaint fails to allege that the statements in this message were actionably false, that Ms. Gomez read or was aware of the email, that Ms. Gomez was responsible for anything at the Company related to the statement, or that Ms. Gomez was aware of any inaccuracies. The passive act of receiving an email is "simply not enough to establish [her] culpable participation." *Universal Am. Corp.*, 176 F. Supp. 3d at 399 (alleging defendants "knew of the many misrepresentations" did not suffice, even if they had "knowledge of the fraud itself"); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487 (3d Cir. 2013) (dismissing claims where "the only answer to the question of what the [defendants] did that intentionally furthered the fraud [] is nothing").

3. <u>Plaintiffs Fail To State A Section 10(b) Claim</u>

Plaintiffs' control person claims against Ms. Gomez also fail because they do not state a Section 10(b) claim against Wondermind. *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159 n.21 (3d Cir. 2004) ("[T]he lack of any predicate violation of the Securities Exchange Act of 1934 compels dismissal of control person claims."). To state a claim for securities fraud under Section 10(b) and Rule 10b-5, Plaintiffs must prove: "(1) a misstatement or an omission of material fact, (2) with scienter, (3) upon which the plaintiff reasonably relied, and (4) that the plaintiff's reliance was the proximate cause of his or her injury." *Chase Manhattan Mortg. Corp. v. Advanta Corp.,* 2005 WL 2234608, at *12, 18 (D. Del. Sept. 8, 2005) (holding the elements of securities fraud and common law fraud "overlap substantially"). Plaintiffs' securities fraud allegations fail to plead with particularity any actionable misrepresentations or omissions, scienter, and/or reliance in connection with the fraudulent inducement. It necessarily follows that the control person claims must be dismissed.

## VI. <u>CONCLUSION</u>

For all of the foregoing reasons, Ms. Gomez respectfully requests that the Court dismiss all claims against her, with prejudice.

Of Counsel:

Mathew S. Rosengart
*(pro hac vice)*
GREENBERG TRAURIG, LLP
1840 Century Park East
Suite 1900
Los Angeles, CA 90067
Tel: (310) 586-3889
RosengartM@gtlaw.com

Andrew R. Gray
(*pro hac vice*)
Kevin Hamilton
(*pro hac vice*)
GREENBERG TRAURIG, LLP
18565 Jamboree Road
Suite 500
Irvine, CA 92612
Tel: (949) 732-6500
AndrewR.Gray@gtlaw.com
Kevin.Hamilton@gtlaw.com

DATED: August 26, 2026

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Samuel L. Moultrie*
Samuel L. Moultrie (#5979)
222 Delaware Avenue
Suite 1600
Wilmington, DE 19801
Tel: (302) 661-7000
MoultrieS@gtlaw.com

*Attorneys for Defendant Selena Gomez*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of August, 2026, I electronically filed the foregoing opening brief using the CM/ECF System which will send notification of such filing to all counsel of record.

*/s/ Samuel L. Moultrie*
Samuel L. Moultrie (#5979)